[Crim. No. 1115. In Bank.—July 22, 1904.]

Ex Parte CHARLES H. WHITLEY, on Habeas Corpus.

DENTISTRY — STATE LICENSE LAW — POLICE POWER — CONSTITUTIONAL LAW.—The state law requiring the obtaining of a license from the board of dental examiners before engaging in the practice of dentistry, in future cases, is a constitutional and valid exercise of the police power.

Id.—Exemption of Previous Practitioners—Special Privileges.—The provision exempting persons lawfully practicing dentistry prior to the passage of the act is not unconstitutional as conferring special privileges and immunities upon said practitioners.

Id.—Power of Legislature to Determine Qualifications—Discrimination as to Sources of Knowledge and Skill.—The legislature has the power to determine the qualifications of the practitioners of dentistry, and to fix any reasonable standard for determining the competency of an applicant for admission to the practice thereof, and to make proper discrimination as to the sources of professional qualification therefor based on suitable knowledge and skill.

Id.—State Agency—Determination of Reputable Colleges.—The legislature had the power to vest the state board of dental examiners, as an agency of the state, with the power to determine whether particular dental colleges were reputable.

Id.—Judicial Power.—The statute does not confer judicial power upon the board in the sense that is prohibited by the constitution.

WRIT OF HABEAS CORPUS to George W. Wittman, Chief of Police of the City and County of San Francisco, holding petitioner under warrant from the Police Court. A. J. Fritz, Judge.

The facts are stated in the opinion of the court.

William M. Cannon, and Arthur W. Perry, for Petitioner.

James F. Peck, and Charles C. Boynton, *Amici Curiæ*, for Petitioner.

E. Myron Wolff, for Board of Dental Examiners.

Jordan, Treat & Brann, *Amici Curiæ*, for State Central Committee on Dental Legislation.

LORIGAN, J.—Petitioner was arrested for practicing dentistry without a license, contrary to the Dental Law of this state, and prosecutes this writ, claiming that said law is unconstitutional for several reasons.

The history of our Dental Law is found in enactments by the legislature at its sessions in 1885, 1901, and 1903, and in order to properly appreciate the points made by petitioner, it will be necessary to refer to some of the provisions of all of these acts. The original act regulating the practice of dentistry was passed in 1885 (Stats. 1885, p. 110), and it was provided in section 1 thereof that "it shall be unlawful

for any person, who is not at the time of the passage of this act engaged in the practice of dentistry in this state, to commence such practice, unless he or she shall have obtained a certificate as hereinafter provided.'' Section 4 provided that ''within six months from the time this act takes effect, it shall be the duty of every person who is now engaged in the practice of dentistry in this state, to cause his or her name and residence or place of business to be registered with the board of examiners.''

The act further provided for the examination by the board of examiners of applicants for dental certificates other than those engaged in practice at its passage, and provided that if the board should determine that they possessed the requisite knowledge and skill in dental surgery, they should issue a certificate which would entitle them to practice, and might also indorse as satisfactory diplomas from any reputable dental college, and issue certificates for the same purpose thereon.

In 1901 (Stats. 1901, p. 564) an entirely new act regulating the practice of dentistry in this state was passed—one more full, complete, and detailed than that of 1885, which is thereby repealed.

Section 1 of this latter act provided that: ''It shall be unlawful for any person to engage in the practice of dentistry in the state of California, unless said person shall have obtained a license from a board of dental examiners, duly authorized and appointed under the provisions of this act to issue licenses; provided, that this act shall not affect the right, under the laws of the state of California, of dentists to practice dentistry who have lawful right to practice dentistry at the time of the passage of this act.''

Subsequent sections of this act also provided, as in the act of 1885, for issuance to others desiring to engage in the practice of dentistry certificates or licenses entitling them to do so upon compliance with certain prescribed conditions as to examination and so forth, which it is unnecessary to state now, as they will be referred to more fully hereafter when we come to an examination of further objections particularly urged against the provisions of the act of 1901 and sections amendatory thereof in the act of 1903.

This, too, is all the reference required to the particular

sections of the acts of 1885 and 1901, so as to fully understand and discuss petitioner's first contention.

1. He insists that section 1 of the act of 1885 was unconstitutional because it discriminated between two classes, in this, that it made it unlawful for any person to engage in the practice of dentistry after the passage of the act, without first obtaining a license, and, on the other hand, dispensed with the necessity of first obtaining such license in favor of those practicing at the time the act was passed.

Notwithstanding this act of 1885 was repealed *in toto* by the act of 1901—and for that reason construction of its provisions would seem unnecessary—petitioner nevertheless claims that its construction is most important, and that a determination in favor of its validity is vital to the integrity of the act of 1901. That if section 1 of the act of 1885 is unconstitutional, then, he contends, section 1 of the act of 1901 is equally so, because the persons provided for in the latter section, as a class exempt from obtaining a license—namely, "persons who have a lawful right to practice dentistry" at the time of its passage—can only exist and be ascertained by virtue of the validity of the act of 1885, and must necessarily consist, in the aggregate, of those who were practicing dentistry when it was enacted, and who were exempted by its terms from obtaining a license, and those to whom licenses had been issued on examinations, in compliance with its conditions, at the time the act of 1901 was passed; that consequently, in order to ascertain what dentists had "lawful right" to continue in practice at the passage of the act of 1901 without an examination, there is necessarily involved a determination of the validity of section 1 of the act of 1885.

And that, unless the act of 1885 was valid, there could exist no particular class in whose favor the act of 1901 would operate as an exemption, because if it was void, then, as at the time the act of 1901 was passed, every person who saw fit to do so had an unrestricted and absolute right to practice dentistry, the exemption by the act of 1901 in favor of all those who had a "lawful right to practice dentistry" amounted to nothing. As everybody had a lawful right to practice, if there was no valid law prior to 1901, an exemption of all persons having "lawful right" from the provisions of that act left nobody upon whom the law could operate, because,

if all had a lawful right, all were exempt. The act of 1901 would, therefore, in its opening section, unless the act of 1885 was constitutional, be meaningless, inoperative, and self-destructive.

Aside from this, a similar and independent attack is made upon the act of 1901 that is made on the act of 1885 as equally discriminating between classes, in requiring the procurement of a license by one, and exempting the other from doing so.

If, however, the act of 1885 was valid, notwithstanding it exempted dentists practicing at the time of its passage from obtaining a license, and requiring others to do so, then certainly the act of 1901, in as far as it carried into its provisions and also exempted those same persons as being within the class "having a lawful right to practice" under the act of 1885, was also valid. As to the other members of the exempt class, under the act of 1901, being those who had obtained a license under the act of 1885, it cannot be successfully contended that it was not proper to exempt them. They had already complied with the conditions of the law and obtained a license, and it was unnecessary, if not also unfair, to require them to do so again.

So that it will be sufficient to address ourselves to a consideration of the validity of section 1 of the act of 1885, because the law which determines that question will apply with equal force, and dispose of the similar objection to section 1 of the act of 1901, at least to the extent that it is claimed to be discriminating in this particular.

While counsel for petitioner attacks both these acts upon the ground generally that they are discriminatory, he particularizes in that regard that they are obnoxious to various provisions of both the constitution of this state and of the United States; that they are violative of the provisions of the one, because they constitute special legislation; make an arbitrary distinction in a class between dentists practicing at the time of the passage of the act and those seeking to practice afterwards, when it should equally apply to all dentists, and when there exists no natural, intrinsic, or constitutional reason why the discrimination between them should be made; that it is violative of the provisions of both constitutions in that it attempts to grant special privileges and immunities to one class of dentists which it denies to another.

Approaching now the discussion of these propositions:

It is not questioned by counsel for petitioner but that the state has the right to regulate the practice of dentistry; to provide measures for the protection of the public against the incompetency and ignorance of those who, while they would assume the duties and responsibilities of that profession, are yet unfitted and unqualified to discharge them.

In fact, it must be conceded that it is a common and valid exercise of legislative power to prescribe regulations under which only those persons possessing proper qualifications shall be admitted to the practice of any profession or calling re-quiring special skill.

This right of legislation is always recognized as a salutary and wise exercise of the police power of the state for the pro-·tection and safety of the public against unskillful and incompetent persons.

And it is the fact that the state has this power which must largely enter into a determination of the validity of the sections in question. The legislation of the state of California on this subject is not new. Similar legislation has obtained in a large number of the states, and in some of these the courts have had occasion to pass on the identical question presented here. In some instances the question arose under acts regulating the practice of medicine; in others, as here, regulating the practice of dentistry; but the same reasoning would apply and the same constitutional principles govern as to the validity of provisions of a dental as of a medical act, because the profession of dentistry is but a special branch of the medical profession, and the power of the state to regulate as to both in the interests of the public is equally clear.

An examination of these authorities shows that an exemption in favor of those practicing at the time of the passage of an act regulating the practice of dentistry, and which requires all others to obtain a license and certificate for that purpose, is open to none of the constitutional objections urged in the case at bar.

Such legislation has been uniformly upheld.

And, as the reasons therefor are stated in the opinions, it is unnecessary to discuss the point any further than to quote from them. They deal with all the objections urged by petitioner, both as to the provisions of the acts in controversy

being special and discriminatory legislation, and as being a grant of special or exclusive privileges or immunities.

In the case of *State* v. *Randolph,* 23 Or. 74,[1] involving the validity of an act concerning physicians and surgeons, which exempted physicians in practice at its passage from its operation, the supreme court of that state said: "The first point is based on the assumption that this act, or section 13 of the act, is in conflict with section 20, article I of the state constitution, which provides that 'no law shall be passed granting to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens;' and the second point is based on a like assumption that section 13 of the act is in conflict with section 2 of article IV of the constitution of the United States, which provides that 'the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states;' and also in conflict with that portion of the fourteenth amendment thereto, which provides that 'no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States.' Both of these contentions involve the same principle, and the discussion of one necessarily includes the other, so that their separate consideration is not necessarily to be pursued. Both proceed upon the hypothesis that the act grants privileges or immunities to one class of persons while it denies the same privileges or immunities to another class. It is not thought that either of these contentions is tenable, or that the section referred to is in conflict with the constitution of the state or of the United States. The right of every person to pursue any lawful business, occupation, or profession he may choose to pursue, subject to such restrictions as the government may impose for the protection of the health, welfare, and safety of society, is unquestioned. . . . To provide means for the protection of the public health from the ignorance and incapacity of those who are unfitted to discharge the duties of a physician, our state, as other states have done, enacted the law in question; and unless it grants to some citizen or physician, or class of them, some right or immunity which, upon like terms or under similar circumstances, it denies to another, it is a valid exercise of the police power and must be upheld. Section 13 of the act, in

[1] 37 *Am.* St. Rep. *655.*

effect, only permits physicians that were engaged in the prac-
tice when the law took effect, upon registering as required by
its proviso, to apply to the board and obtain a certificate of
qualification authorizing them to practice medicine or surgery
without an examination. In a word, it permits persons who
were engaged in the practice when the law took effect to con-
tinue in the practice without an examination. As it is the
right of the state to prescribe qualifications based on knowl-
edge or professional skill, necessarily the state must be the
judge of such qualifications, and if the rule established to
determine them is reasonable and appropriate for that pur-
pose, it cannot operate to deprive any one of the privilege or
right to practice his profession. The test of qualification
under the act is based on medical skill and knowledge. If
the person seeking to practice medicine has a diploma or
license from some reputable institution, it is sufficient evi-
dence, under the act, of the requisite qualifications to entitle
him to practice. It is only when the person wishing to
practice has no such evidence of his qualification that the act
requires that he shall submit himself for examination by the
board. In establishing this rule, the state saw fit, for reason
satisfactory to itself, to except from its provisions, by section
13, those physicians who were engaged in the practice at the
passage of the act. In doing this it made the fact of being
so engaged in the practice at that time sufficient evidence of
qualification—equivalent to a diploma—rendering an exami-
nation unnecessary.''

In *State* v. *Creditor*, 44 Kan. 565,[1] it is said, relative to a
similar provision in the dental law of that state: ''No arbitrary
or capricious conditions are imposed. The profession and
practice are open to every citizen of the United States who is
qualified, and who can produce evidence of the same. The
legislature saw fit to permit those practicing in the state when
the act was passed to continue to practice without diploma or
other evidence of competency. . . . The legislature proceeded
upon the theory that the fact that they had been engaged in
the practice within the state was sufficient evidence of their
proficiency in the profession. This fact was made by the
legislature an evidence of skill and competency equivalent to
a diploma from a dental college; and the wisdom of either

---

[1] 21 Am. St. Rep. 306.

test is a question for the legislature and not for the courts. The act cannot be held to duly discriminate between persons or classes, and unconstitutional because it exempts those engaged in the practice within the state when the law was enacted from the necessity of obtaining a diploma.''

In *Ex parte Spinney*, 10 Nev. 323, where an act exempting dentists who had been practicing for a period of ten years next preceding its passage was involved, in sustaining the validity of the law it is said: ''It in effect declared that the physician or surgeon who was engaged in the practice immediately preceding the passage of the act, was as well qualified, in the judgment of the state, to continue the practice of his profession, as the student coming fresh from the halls of college with his diploma, was to commence it.  But in establishing this rule as to these physicians and surgeons, the state did not deny the privilege or the right of practicing medicine or surgery to any one.  No class of citizens of this state is prohibited from the practice of medicine or surgery by the act, provided they have the proper qualifications, and comply with the law in relation thereto.  The error of the defendant's contention consists in assuming that the act grants 'privileges or immunities' to one class of citizens or physicians of this state which it denies to other citizens of the state or other states.  The act does not grant privileges or immunities to any citizen or class of citizens, either within or without the state. It only establishes a rule of evidence by which qualificatior to practice medicine and surgery is to be determined.  It makes the fact of a person being engaged in the practice when the law took effect sufficient evidence of his fitness to continue the practice of his profession without an examination, in the same way that the diploma of the student is accepted as sufficient evidence of his fitness to commence the practice without an examination.''  In *People* v. *Phippen*, 70 Mich. 6, construing an act excepting physicians who had practiced five years before its passage, the court said: ''Statutes very similar to this have been upheld in many of the states where their constitutionality has been brought in question, and in many of the states very similar statutes have been enforced without question, and we are unable to find a case in the courts of any of our sister states or in the federal

courts where such statutes have been overturned upon constitutional grounds as abridging the privileges and immunities of citizens of the United States or as depriving any person of property without due process of law, or as being in conflict with section 2 of article 4, providing that the citizens of each state shall be entitled to all the privileges and immunities of the several states.''

In the same line will be found the cases of State v. Green, 112 Ind. 462; State v. Vandersluis, 42 Minn. 129; West v. Clutter, 37 Ohio St. 348. Citation is also made to the American and English Encyclopædia of Law, 2d ed., vol. 22, p. 781.

Several cases are cited by counsel for petitioner in support of his contention,—those nearest approaching the point at issue being State v. Hinman, 65 N. H. 103,[1] and State v. Pennoyer, 65 N. H. 113, respectively, and Scholle v. State, 90 Md. 740. The first two cases involved the validity of an act regulating the practice of dentistry, which exempted all persons from an examination who had resided and practiced dentistry continuously in the same town or city of the state for five years last past. The act construed in Scholle v. State exempted physicians from examination also because of residence in one place. These acts were declared unconstitutional, and properly so. The language used in State v. Hinman points the defect in all: ''By an arbitrary test having no reference to skill, learning, or fitness for the practice of the profession, certain persons are exempt from the payment of a license fee to which others of equal and perhaps superior acquirements and experience are subjected. It is a discrimination founded solely upon the accidental circumstances of residence, or of a change of residence, and falls within the prohibition of the constitution.''

In these cases last cited, particular individuals of a class of practicing dentists were exempted by reason of locality, and given special privileges. It was the exemption of a class within a class for purely local reasons.

In the cases we have cited, however, fitness and learning are alone taken into consideration, and the fact of a person being in practice when the law took effect was deemed by the legislature sufficient evidence of fitness to continue in the practice without further examination.

---

[1] 23 Am. St. Rep. 22, and note.

We think the cases we have quoted from and those we have cited fully sustain the view, that the exemption from examination under the act of 1885, carried into the act of 1901, of those who were practicing the profession of dentistry when they were passed, and exacting from those who sought the right to practice after its passage an examination as to their qualifications, is not discriminatory.

All sections of the act operate equally upon all the actually practicing dentists in the state, which was the only existing class at its passage, and which was the only class concerned, and the only one upon which they could operate.

They simply made the fact of actual practice at its passage such sufficient evidence of competency, as a successful examination of those applying to practice after its passage.

Without discussing this matter further, we think these cases sustain the propositions that the legislation complained of is neither special nor class, and that thereby no privileges or immunities are conferred upon one class to the detriment of another, and, as a consequence, that neither section 1 of the act of 1885 or the similar section of the act of 1901 is violative of any of the provisions of the state or federal constitution, as insisted upon by petitioner.

2. It is next claimed by petitioner that section 12 of the act of 1901, as amended by the act of 1903, arbitrarily creates three classes of persons who may practice dentistry in the state after examination by the state board of dental examiners,—namely, first, graduates of reputable dental colleges; second, graduates of high schools, or similar institutions of learning in this state, or any state of the United States, requiring a three years' course of study, who have served an apprenticeship of four years with licensed practitioners within this state; third, dentists from other states in the United States who have been licensed practitioners for five years.

We find no merit in this claim of petitioner. It is entirely within the power of a legislature to fix any reasonable standard for determining the competency of an applicant for admission to the practice of dentistry. It might, as under the act regulating the practice of medicine and surgery in this state (Stats. 1901, p. 56), where only those who are

graduates from a medical college can be admitted to practice, have also made a similar single standard, limiting admission to practice dentistry to those alone who had graduated from some dental college. As this might have been the sole condition upon which an applicant could be examined, it cannot be said that legislation which enlarges the right and extends it to others can be said to be discriminatory. The law does not operate to exclude any one from the profession. The field is left open to all who are in possession of the required qualifications. It simply fixes the standard under which all persons who desire to enter the profession are brought as nearly as possible to the same degree of professional competency.

The law, no doubt, is discriminatory, but not in any constitutional sense. It does not discriminate between classes. The discrimination goes to the degree of learning and skill which all applicants for examination must possess. It discriminates between those who have the necessary degree of learning and skill, and those who have not; between those who are able and those who are unable to acquire it. It is not an unreasonable or capricious discrimination applying to classes as such, or members of a class, but is based solely upon professional qualifications. It is a discrimination which, in the interest of the public welfare, it is the duty of the legislature to make, and the necessity for which, and its nature and extent—whether an examination and right to practice shall depend on the possession by the applicant of a diploma of a dental college only, or be extended to others, and how far—depend primarily upon the judgment of the legislature, which, when reasonably exercised, the courts cannot control.

These principles will be found fully discussed and sustained in *State* v. *Vandersluis,* 42 Minn. 129, and *Dent* v. *West Virginia,* 129 U. S. 122, as also in *Ex parte Gerino,* 143 Cal. 412.

3. It is further claimed that the operation of section 12 of the act of 1903, which provides that "No person shall be eligible for examination by the state board of dental examiners who shall not furnish satisfactory evidence of having graduated from a reputable dental college, which must have been indorsed by the board of dental examiners of Cali-

fornia,'' is unconstitutional and void, and a delegation of
power of a judicial nature to the board of examiners which,
if exercised in an arbitrary and unlawful manner, it is
beyond the power of the court to control.

There is no foundation for the claim that the statute at-·
tempts to confer judicial power upon the board in the sense
that it is prohibited by the constitution.

It is not at all uncommon for inferior boards or officers to
be invested with power which calls for the determination of
facts and the exercise of discretion in the discharge of the
duties of their office.  This power, it is true, is in a sense
judicial, but it cannot be said that it is an exercise of ''judi-
cial power'' as that term is used in the constitution in
conferring judicial power upon courts.  The question is, how-
ever, not an open one in this state, and seems to have been
settled adversely to petitioner's contention in *County of Los
Angeles* v. *Spencer,* 126 Cal. 670.[1]  Upon the other point,
that the power conferred on the board is of such a character
as, if exercised arbitrarily, it will be beyond the power of
the court to control it, it may be said that petitioner does not
seem to have applied to the court on any complaint that the
board has taken such arbitrary action.  He has not com-
plained to any court that the board has unjustly and arbi-
trarily dealt with him, but is here contending that the law
is unconstitutional, and that, under it, his right to practice
is not subject to action or determination by the board at all.
If he has been unjustly and arbitrarily dealt with, and should
apply to the courts for redress, it will be doubtless found,
as is stated in *Dent* v. *West Virginia,* 129 U. S. 124, where the
same objection was raised as to power conferred on the board
of medical examiners of West Virgina, that ''If in the pro-
ceedings under the statute, there should be any unfair or
unjust action upon the part of the board in refusing him a
certificate, we doubt not that a remedy would be found in
the courts of the state.''  (*Reetz* v. *Michigan,* 188 U. S. 505;
*Wisconsin* v. *Chittenden,* 112 Wis. 558.)

It is further insisted that this section 12 of the act of 1903
is obnoxious to the constitutional provisions because it dele-
gates to the board of examiners the power to decide what col-
leges are reputable, not from any standard furnished by the

[1] 77 Am. St. Rep. 217.

legislature, but from their own arbitrary view upon the subject.

But it must be remembered that the act regulating the practice of dentistry and similar acts are not passed to promote the personal ends of individuals, but as salutary enactments in the exercise of the police power of the state to legislate for the safety, health, and welfare of the people. The boards which are selected under such legislative power are to that extent agencies of the state, and the board of dental examiners under the Dentistry Act is a particular instrumentality selected as a state agency in the regulation of the practice of dentistry. While the legislature, in conserving the public welfare, recognized that the possession of a diploma from a regular dental college, where acquiring the theory and practice of medicine fully engaged the time and attention of the student, was a high evidence of his ability to practice dentistry, it also assumed that there might be institutions whose required standard of scholarship was so low that the possession of a diploma from them would be little, if any, evidence of proficiency in dentistry; or, that there might be pretended dental institutions, requiring no preparation and fraudulently issuing diplomas after a perfunctory, if any, examination, and in sole consideration of a fee. In this condition of things, while the legislature intended that only diplomas from a reputable dental college should be recognized by the board, it realized that it was impracticable, if not impossible, for it to adopt any fixed standard by which that matter could be determined in advance. It realized, as was said by the court in *Wisconsin* v. *Chittenden,* 112 Wis. 558, that "What is reputable in a dental college must necessarily be determined from a standpoint of men of scientific attainments in the line of work it represents, not from that of mere laymen," and committed the determination of that matter to the state agency it created, consisting of dentists, presumably learned, trained, and eminent in the profession, and obligated, under the law, to deal fairly and justly with all applicants and the colleges from which they presented their diplomas. We do not perceive that in so doing any provision of the organic law was violated. The power to determine whether a college was reputable had to be lodged somewhere, and it was properly committed to the only body which could fairly and intelli-

gently determine, not only as to the qualifications of the applicant, but upon the reputation of the college whose diploma he claimed to possess. This is a power which seems to be usually given by the legislature to boards of examiners, and its commission is sustained by the courts. (*State* v. *Chittenden,* 112 Wis. 569; *Williams* v. *Dental Examiners,* 93 Tenn. 627; *People* v. *Dental Examiners,* 110 Ill. 180; *Dent* v. *West Virginia,* 129 U. S. 124; *State* v. *Call,* 121 N. C. 646; *State* v. *Francis,* 57 Ohio St. 15; *Gothard* v. *People,* 74 Pac. (Colo.) 891.)

Practically the same point was made by the petitioner in *Ex parte Gerino,* 143 Cal. 412, and decided adversely to him.

The case of *Van Vlick* v. *Board of Dental Examiners,* 48 Pac. 223, is cited by both sides, in the case at bar, on the question just disposed of. That was a Department decision in which a rehearing was granted, and, before any hearing or further decision was rendered by this court, the proceeding was dismissed on motion here; hence the Department decision in that case is not authority.

This disposes of the principal and main points urged by the petitioner against the validity of the various sections of these acts as affecting their constitutionality. The objections leveled against section 12 of the act of 1903 that it is discriminatory between classes, and unconstitutional, for the other reasons suggested, are equally asserted against similar provisions in the acts of 1885 and 1901, so that without descanting particularly on those provisions, it may be said, generally, that the views we have expressed and the conclusion we have reached apply equally to them as to section 12 of the act of 1903.

Other objections urged against the provisions in several of these acts we deem untenable and requiring no special notice.

The writ is dismissed and the petitioner remanded to the custody of the chief of police of the city and county of San Francisco.

McFarland, J., Angellotti, J., Shaw, J., Henshaw, J., and Van Dyke, J., concurred.

Rehearing denied.