[Civ. No. 1313.  First Appellate District.—March 31, 1914.]

JOHN L. BOHANNON, Appellant, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA et al., Respondents.

PHYSICIANS AND SURGEONS—POWER OF LEGISLATURE TO REGULATE PRACTICE—PRESCRIBING QUALIFICATIONS OF PRACTITIONERS.—The legislature is clothed with the power to regulate the practice of medicine and surgery, and in the exercise of that power may protect the people from the imposition of quacks and charlatans, and insure proper qualifications of those seeking to administer aid to the sick and infirm. With that end in view the legislature may prescribe what are and what are not proper qualifications for those to possess who would engage in this calling, and in the determination of this question it may exact a certain degree of skill and learning upon which the community may rely. When it has done this its action is binding upon the courts, provided its power has been constitutionally exercised.

ID.—PRACTITIONERS OF SPECIAL BRANCH OF MEDICINE—ISSUANCE OF CERTIFICATES—REASONABLENESS OF CLASSIFICATION—STATUTE OF 1911.—The provision in the Medical Practice Act (Stats. 1911, p. 1437) that the medical examiners may issue a certificate to any person who has practiced a special branch of medicine and surgery for a period of thirty-five years, fifteen years of which time shall have been within this state, upon the filing of an affidavit, etc., showing such fact, and the passing of a successful examination, is not unconstitutional as making an unreasonable classification in that

it is not based upon any test of ability but proceeds from the commission of a number of misdemeanors, because one, before practicing any branch of medicine or surgery within this state for fifteen years without a certificate, must necessarily have been violating the medical acts which throughout that period have required such certificate, but it announces a test of qualification whereby an individual may gain a right to practice a special branch of medicine and surgery, just as the preceding paragraphs in the statute announce the test of qualification whereby an individual may gain the right to practice medicine and surgery generally within the state.

ID.—SPECIAL BRANCH OF MEDICAL PRACTICE—WHAT CONSTITUTES—DETERMINATION OF QUESTION.—Whether the "treatment of cancers, tumors, malignant growths and cutaneous diseases" constitutes a "special branch of medicine and surgery" within the meaning of such act is a matter for determintion by the trial court under competent evidence. An appellate court cannot judicially say that those disorders are not so correlated that they cannot be classed as subjects for a special branch of medical and surgical treatment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Samuels & Magnes, for Appellant.

W. W. Kaufman, for Respondents.

KERRIGAN, J.—This is an appeal from a judgment entered upon the sustaining of defendants' general demurrer to the amended complaint.

The principal point presented in the court below was as to the constitutionality of the amendment to the statute in relation to the practice of medicine upon which the plaintiff bases his claim that it is the duty of the defendants, as the Board of Medical Examiners, to issue to him a certificate authorizing him to practice a special branch of medicine and surgery.

The amendment referred to is chapter 740 of the Statutes of 1911, approved May 1, 1911, which amends that certain act for the regulation of the practice of medicine, surgery, etc., approved March 14, 1907, [Stats. 1907, p. 252], as amended by an act approved March 19, 1909, [Stats. 1909, p. 418],

and more particularly amending section 6 of said act of 1907, and refers to the qualifications necessary for obtaining a certificate entitling the holder to practice medicine and surgery in the state of California. Said amendment provides in substance that the medical examiners may issue a certificate to any person who has practiced a special branch of medicine and surgery, at the time the act goes in effect, for a period of not less than thirty-five years, fifteen years of which time shall have been within the state of California. It further provides that an applicant to practice a special branch of medicine must file an affidavit, etc., showing that he has successfully and effectively practiced "the special branch of medicine and surgery" for the term of years mentioned. It further enacts that such applicant shall not be required to file a diploma, but he may be required to take an examination, which shall be practical in character, consisting of a demonstration in the special branch of medicine and surgery set forth in the affidavit of such applicant, for the purpose of ascertaining his fitness to practice such special branch. And finally, it provides that if, after such practical demonstration, an applicant shall qualify by effecting a cure, the State Board of Medical Examiners shall issue a certificate to such applicant to practice the special branch of medicine and surgery set forth in his affidavit.

Respondents' contention in the court below was, and is here, that the classification is unreasonable, in that it is not based upon any test of ability, but proceeds from the commission of a number of misdemeanors, because one, before practicing any branch of medicine or surgery within this state for fifteen years without a certificate, must necessarily have been violating the medical acts which throughout that period have required such certificate. On the other hand, appellant's position was, and is, that the amendment announces a test of qualification, whereby an individual may gain a right to practice a special branch of medicine and surgery, just as the preceding paragraphs in the statute announce the test of qualification whereby an individual may gain the right to practice medicine and surgery generally within this state.

The trial court was of the opinion that the amendment, insofar as it provides for special certificates, is unconstitutional, for the reason that the classification is unreasonable.

The question, therefore, here presented is the interpretation to be given to this amendment when tested by the provisions of the state constitution. Does the statute classify according to ability, as claimed by appellant, to be inferred from years of experience, practical demonstration, and the passing of the examination required by the act; or does it classify according to the number of years of commission of misdemeanors, as asserted by respondents?

The law must be upheld unless clearly violative of the constitution.

As to what is a proper classification by the legislature, the courts have frequently been called upon to determine. In *Ex parte King,* 157 Cal. 161, 164, [106 Pac. 578], it is said: "While arbitrary discriminations by the legislature between persons standing in the same relation to the subject of the legislation will not be sustained by the courts, it is firmly settled that 'a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction' "; and further, "if it operates uniformly upon all members of such class, it necessarily has the 'uniform operation' required by section 11 of article I of the constitution. The question whether the individuals affected by a law do constitute such a class is primarily one for the legislative department of the state; and it is hardly necessary to cite authorities for the proposition that when such a legislative classification is attacked in the courts every presumption is in favor of the validity of the legislative act. Where, upon the facts legitimately before the court, it is reasonable to assume that there were reasons, good and sufficient in themselves, actuating the legislature in creating the class, though such reasons may not clearly appear from a mere reading of the law, such presumption will be made, and the legislation upheld. To warrant a court in adjudging the act void on this ground it must clearly appear that there was no sufficient reason to warrant the legislative department in finding a difference and making the discrimination" (citing *Grumbach* v. *Lelande,* 154 Cal. 679, 684, 685, [98 Pac. 1059].)

Again in *Hellman* v. *Shoulters,* 114 Cal. 147, [44 Pac. 918], the court, in discussing the question of classification, says: "It has been uniformly held that a law is general which applies to all of a class—the classification being a proper one

—and that the requirement of uniformity is satisfied if it applies to all of the class alike. . . . The word 'uniform' in the constitution does not mean universal.   The section intends simply that the effect of general laws shall be the same to and upon all persons who stand in the same relation to the law, that is, all the facts of whose cases are substantially the same.''

"The classification, however, is not," as stated in *Ex parte Sohncke,* 148 Cal. at page 267, [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 959], "a proper one for distinct legislation if it is not founded upon some natural, intrinsic or constitutional distinction—a distinction which bears some relation to, or furnishes cause for, the particular legislation embraced in the act.''

It is not necessary to review in detail all the decisions of the supreme court upon this subject, the above expressions sufficiently indicating the well established rules that guide us in determining whether a classification is violative of the constitutional restraint and prohibition.

The legislature is clothed with the power to regulate the practice of medicine and surgery; and in the exercise of that power it is proper for it to protect the people from the imposition of quacks and charlatans, and to insure proper qualifications of those seeking to administer aid to the sick and infirm.   And with that end in view it may prescribe what are and what are not proper qualifications for those to possess who would engage in this calling; and in the determination of this question it may exact a certain degree of skill and learning upon which the community may rely.   When it has done this its action is binding upon courts, provided its power has been constitutionally exercised.

The provisions of the act complained of clearly show a legislative intent to admit certain persons to practice a special branch of medicine and surgery who have previously violated the law—not, however, because they have violated the law, but because of an acquired experience in given branches of medicine or surgery.   It is not seriously contended, nor can it be, that such is not the express intent of the legislature. We are therefore only concerned with the constitutionality of the amendment.   As before stated, the trial court decided that the classification was unconstitutional.

It is conceded that the act of the legislature may not have been the most expedient or salutary, but the courts are not concerned with the good or bad policy exercised by that branch of the government. It is not the province of the courts to inquire into the motives or policies which may have actuated the legislature in passing a law—except insofar as may be necessary to aid them in this correct construction—nor to signify their approval or disapproval of its acts, provided the legislative body has kept within constitutional limits. In the present case the method of classification adopted is assailed for the reason that it extends certain privileges to a class that has been practicing medicine and surgery *illegally* for a certain period. In the adoption of qualifications necessary to pursue certain callings requiring skill and ability, legislatures frequently exempt from their operation those who have lawfully practiced in the state for a prescribed time, and such provisions have received the sanction of the courts as not being violative of the constitution on the grounds of unreasonableness or discrimination. (*Ex parte Whitley,* 144 Cal. 167, [1 Ann. Cas. 13, 77 Pac. 879].) The only argument therefore against the classification here adopted is that it extends a certain exemption to a particular class who for a certain period have been practicing *illegally.* Does this illegal practice, *ipso facto,* deprive the legislature of the right to adopt regulations under which the persons in this class, as such, may gain the right to practice medicine and surgery? We are of the opinion that the question must be answered in the negative.

It is argued by respondents that such classification is not based upon the test of ability, and that many persons who are quacks and have practiced for thirty-five years and longer, are still such. In some instances this is undoubtedly true. On the other hand there may be a great number of capable persons practicing medicine and surgery in violation of law who have been unable to obtain a certificate. However this may be, the examination that the amendment requires is intended as a safeguard against such a contingency; and although not an infallible test it may be said that it shares its weakness with all examinations designed to test the qualifications of those entering them.

It was not a crime at the common law to practice medicine without a license. The state law makes such act a misdemeanor. The offense at most is *malam prohibitum,* and does not involve inherent baseness. The classification cannot be said to be founded upon the commission of successive misdemeanors, but rather upon the years of experience acquired—although unlawfully.

But the duration of the practice is not all that is required by the amendment. The applicant is not qualified for practice by the number of years of his violation of the law, but he must pass an examination, and in addition thereto give a practical demonstration of his successful practice in a special branch; and even then if he successfully pass these tests the privilege of general practice is not conferred upon him, but only a right to practice the special branch in which he is experienced and proficient. The principal effect of this amendment is to assist the competent offender, by opening to him a limited field in which he may lawfully practice, and under it his years of experience are counted for less than the term of study required in a medical college, for he receives but a limited privilege.

The fact that the amendment favors this class of practitioners by exempting only those who have practiced for the period of time mentioned when the act became effective, does not, under the authorities in this state, make the classification objectionable. A classification based on the extent of time of an unlawful practice is no more objectionable for this reason than one based on a period of lawful practice. If the unlawful element were excluded, the right of the legislature could not be questioned to constitute a number of years of practice as equivalent to a diploma. The validity of such a classification has been often questioned, but uniformly sustained. (*Pasadena* v. *Stimson,* 91 Cal. 238, [27 Pac. 604]; *Ex parte Whitley,* 144 Cal. 167, [1 Ann. Cas. 13, 77 Pac. 879]; *In re Spencer,* 149 Cal. 396, [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896]; *Ex parte McManus,* 151 Cal. 331, [90 Pac. 702]; *Ex parte King,* 157 Cal. 161, [106 Pac. 578].) Such a classification, it is true, is discriminatory, but it is not so in a constitutional sense. The legislature may exempt from complying with certain regulations those who have been practicing for any period of time prior to the adoption of the act,

the experience thus gained being accepted as proof of competency, and the object of the regulations being to ascertain the competency of those subjected to them. Such matters depend upon the judgment of the legislature, which, when reasonably exercised, the courts cannot control. (*Ex parte Whitley,* 144 Cal. 167, [1 Ann. Cas. 13, 77 Pac. 879].)

The right of the legislature to extend the privilege to a class who had previously violated the law is not without judicial authority to support it. The medical act of the state of Ohio provides that one engaged in the practice of medicine in that state but not a legal practitioner, nor a graduate in medicine or surgery, may present himself before the board and submit to an examination as to his qualifications, and upon satisfactory examination the board shall issue to him a certificate. This act was construed in *France* v. *State,* 57 Ohio St. 1, [47 N. E. 1041], though the decision did not involve the point here presented. In the state of Washington, however, similar acts were before the supreme court of that state for interpretation. In *State* v. *Board of Dental Examiners,* 31 Wash. 492, [72 Pac. 110], the question presented related to the practice of dentistry, but the principle is the same. The constitutionality of the act was not involved, and in construing the section the court held that while it was not the legislative intent to admit one who had been practicing without legal authority, still, if such were clearly the fact, it would have to be so held, however unwise such a regulation might be deemed to be. The medical act of the state of Washington contains a provision similar in effect to the one under review. Section 4 of the act of 1909, chapter 192, provides for the obtaining of a certificate to practice medicine and surgery, and contains the following exemption: "Or if having been in continuous practice in one locality in this state for the past two years." In the case of *In re Christensen;* 59 Wash. 314, [109 Pac. 1040], the court in construing this provision uses the following language: "That part of section 4 following the word 'provided' refers to the two classes that may receive licenses —the first one, persons that have been 'legally engaged in such practice prior to the passage of the act'; the second one, those persons who had been in continuous practice in one locality for two years. It might be difficult to see the reason for the legislature exempting one class from the effect of their

unlawful acts and not the other; but the use of the word 'legally' in referring to the other clearly indicates that the legislature intended to give the license privilege to the second class, even though they had violated the previously existing license law. The offense was in any event purely statutory, and merely a misdemeanor, and did not involve moral turpitude; and there is nothing so extraordinary in granting the license privilege by the legislature to those engaged in such practice for two years, even though such persons did thereby violate the then existing license law, as to suggest that we should attribute to the word 'practice,' as here used without qualification, any other than its ordinary meaning.''

It will be noticed that the legislatures of the states mentioned confer upon such persons the right to practice generally. Our statute does not go nearly so far; but, as above stated, merely provides for the right to an examination for the purpose of ascertaining the applicant's qualifications to pursue a special branch of medicine or surgery.

We conclude therefore that the classification is not objectionable for the reasons urged.

The second point raised by the respondents that the applicant has not brought himself within the terms of this statute when he applied to the Board of Medical Examiners for a certificate to practice what he called a special branch of medicine and surgery, presents the question as to what is meant by the words ''a special branch'' as used in said act. The applicant specified as the ''special branch of medicine and surgery'' which he desired to practice, ''the treatment of concers, tumors, malignant growths and cutaneous diseases.'' We cannot judicially say that these disorders are not so correlated that they cannot be classed as a ''special branch of medicine and surgery.'' This question is a matter for determination by the trial court under competent evidence.

For the reasons given the judgment is reversed, and the trial court directed to overrule the demurrer to the amended complaint.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 29, 1914.