[S. F. No. 14394. In Bank.—September 1, 1932.]

PAINLESS PARKER, Appellant, v. THE BOARD OF DENTAL EXAMINERS, etc., et al., Respondents.

Harry Keyser and John C. Stevenson for Appellant.

Jesse W. Carter and Annette Abbott Adams for Respondents.

SEAWELL, J.—This appeal is taken from a judgment entered by the Superior Court of the City and County of San Francisco in a *certiorari* proceeding wherein said superior court affirmed the order or judgment rendered by the Board of Dental Examiners of this state on December 7, 1929, upon original proceedings taken and had by said Board of Dental Examiners, suspending the license of said petitioner, Painless Parker, theretofore issued to him by said board, for a period of five years, commencing January 2, 1930. The matter is before us on an order transferring the cause to this court after decision by the District Court of Appeal, reversing the judgment of said superior court. The provisions of the act regulating the practice of dentistry (Deering's Gen. Laws of California, 1931, title 157, Act No. 2048)

which bear upon the questions presented are found in section 11 of said act, and are as follows:

"Any person shall be understood to be practicing dentistry within the meaning of this act who shall (1) by card, circular, pamphlet, newspaper, or in any other way advertise himself as a dentist, or (2) who shall, for a fee, salary or reward, paid directly or indirectly either to himself or to some other person, perform an operation of any kind, or treat diseases or lesions of the human teeth or jaws, or correct malimposed positions thereof, or (3) in any way indicate that he will perform by himself or his agents or servants any operations upon the human teeth or jaws, or (4) make an examination of, with the intent to perform or cause to be performed any operation on the human teeth or jaws, or (5) who manages or conducts as manager, proprietor, conductor, lessor, or otherwise a place where dental operations are performed; but nothing in this act contained shall prohibit *bona fide* students of dentistry or dental hygienists from operating in the clinical departments of the laboratory of a reputable dental college, or an unlicensed person from performing merely mechanical work upon inert matter in a dental laboratory or a licensed physican from practicing oral surgery."

One of the penalties prescribed for the commission of the acts charged against the petitioner and appellant herein is the revocation or suspension of his license to practice dentistry in this state. Section 12 enumerates certain violations of the act which are punishable as misdemeanors, and certain other violations which are punishable either as misdemeanors or as felonies. It provides as follows:

"Any person who . . . shall under any false, assumed or fictitious name, either as an individual, firm, corporation or otherwise or any name other than the name under which he is licensed, practice, advertise or in any other manner indicate that he is practicing or will practice dentistry, shall for the first offense be guilty of a misdemeanor, and shall be punishable by a fine of not less than two hundred fifty dollars or more than one thousand five hundred dollars, or by imprisonment in the county jail for not to exceed six months, or both, and for the second or a subsequent offense shall be guilty of a felony and upon conviction thereof shall be punished by a fine of not less than one thousand dollars

nor more than three thousand dollars, or by imprisonment in the state prison for a term of not less than one year nor more than three years, or by both such fine and imprisonment. Nothing in this section shall be held to prohibit the conferring of degrees and the bestowing of diplomas by reputable dental colleges of this state which have been approved by the board of dental examiners of California.''

Section 13 enumerates several grounds, any one of which is deemed sufficient cause for the revocation or suspension of a dentist's license. In the list the following appear: The rendition of a judgment by a court of competent jurisdiction finding him grossly unskilful or negligent in his practice; unprofessional conduct or gross ignorance or inefficiency in his profession. Unprofessional conduct is defined to consist of the employment of cappers or steerers to obtain business; aiding or abetting any unlicensed person to practice dentistry unlawfully; ''the use of any false, assumed or fictitious name, either as an individual, firm, corporation or otherwise, or any practice, advertise or in any other manner indicate that he is practicing or will practice dentistry.''

Section 15 of said act provides that the Board of Dental Examiners, or any member thereof, may prefer a complaint ''for violation of this act or any part thereof'', and concludes with making it the duty of the district attorney to prosecute all violations of said act.

The accusation charges petitioner with unprofessional conduct in four counts. The first count charges that between August 4, 1915, and May 31, 1929, petitioner, Painless Parker, aided and abetted an unlicensed person to practice dentistry unlawfully. The gist of this accusation is that on August 4, 1915, petitioner caused to be formed and organized a corporation under the name of Painless Parker Dentist, for the purpose and with the object that said corporation should conduct, own, operate and control dental offices throughout this state, the United States of America and the Dominion of Canada, and thereafter, pursuant to said purpose and object, petitioner, Painless Parker, did aid and abet said corporation, Painless Parker Dentist, an unlicensed person, to practice dentistry in this state and to conduct, own, operate and control dental offices throughout the state of California, where dental operations were performed and the practice of dentistry was carried on.

Count two charges that continuously between September 20, 1921, and January 22, 1929, said petitioner, Painless Parker, through the agency of said corporation, aided and abetted Ramona McShane, an unlicensed person, to participate in the profits of the dental offices so unlawfully operated, conducted and controlled by said Painless Parker Dentist, corporation.

Count three charges that between the dates set forth in count two petitioner, Painless Parker, did wilfully and unlawfully use a false, assumed and fictitious name, to wit, Painless Parker Dentist, a corporation, in conducting and engaging in the practice of dentistry in the state of California, and during said period he did advertise and indicate that he was practicing dentistry under said false, assumed and fictitious name.

Count four alleges that between September 21, 1921, and October 10, 1928, said Painless Parker did wilfully and unlawfully carry on and conduct the practice of dentistry in this state under a false, assumed and fictitious name, to wit, E. R. Parker system, which name was a name other than the name under which said Painless Parker was and is licensed to practice dentistry, and he did advertise and indicate that he was practicing dentistry under said false and fictitious name.

The Board of Dental Examiners found against petitioner on each one of said counts.

It may be taken as conceded that the original or given name of petitioner was Edgar R. and that said original or given name was discarded and "Painless" was, under form of law, adopted in its stead as his first or given name. Prior thereto he had practiced dentistry under his original name, Edgar R. Parker, and his dental license was issued to him in that name. After he had changed his name to Painless Parker he again reverted to the use of his abandoned name, E. R. Parker, and coupled it with a painless technique of dental operations and advertised that examination and advice were obtainable at the dental offices of the E. R. Parker System.

On August 4, 1915, petitioner caused to be formed a corporation named "Painless Parker Dentist" for the purposes, among a long list of others, of conducting, owning, operating and controlling dental offices throughout the state of Cali-

fornia, the United States of America and the Dominion of Canada. The other enumerated purposes, in addition to those already named, for which said corporation was formed, are many, including the manufacture, purchase and sale of all kinds of dental creams and pastes; dental supplies of all and every kind; mechanical goods and apparatus; artificial teeth and crowns; anesthetics; the purchase and sale of gold necessary for use in the practice of dentistry; the manufacture, importation and exportation of dental articles of all kinds; buying, selling and dealing in and with all things, solids and liquids, necessary in the practice of dentistry; purchasing, owning, selling, leasing and dealing in real property of every description, and buying, selling, owning, leasing and dealing in personal property of all kinds; purchasing, owning, selling and dealing in shares of stock, bonds and obligations of private and public corporations; buying, dealing in and selling merchandise of all kinds; employing, engaging and hiring any and all necessary persons in the proper performance of dental offices, in which mechanical and operative dentistry shall be carried on where such persons are needed, and finally for the purpose of carrying on and transacting any and all kinds of businesses in which *natural persons* may lawfully engage.

The amount of the capital stock of said corporation was fixed at $5,000, divided into 500 shares of the part value of $10 per share. The number of shares of stock actually subscribed was three, one, respectively, by E. R. Parker, B. T. Mohney and Harry Morgan, who were appointed directors.

On August 27, 1915, the Associated Dental Supply Company was incorporated by Frances E. Parker, wife of Painless Parker, and Chalmers S. Baird and Frank D. French, each of whom subscribed to one share of its capital stock of the par value of $100 per share. The amount of the capital stock was fixed at $100,000. The three persons above named constituted the board of directors. The purposes for which said corporation was formed included all of those purposes set forth in the Painless Parker Dentist articles of incorporation and others not named in said articles of incorporation, and to which may be added the purposes of engaging in printing, publishing, bookbinding, advertising, publicity work, chartering, constructing, owning, leasing and

operating steam and other craft and vessels; owning, leasing and holding property for mining purposes; to acquire by purchase trademarks, trade names and the goodwill of any business whatever; to make and enter into contracts of every kind and character with firms, associations and corporations, municipalities, bodies politic, including the government of the United States of America and of any state or territory.

The purposes for which the corporations Painless Parker Dentist and Associated Dental Supply Company, respectively, are formed and the powers which they assume to exercise are both multifarious and heterogeneous. While many of the purposes set out in the articles of incorporation have a connection with some of the various forms and kindred branches of dentistry, others have no relevancy whatsoever to the subject.

Said corporations, associations or entities which Painless Parker claims as his legitimate offspring begotten of rights conferred upon him by his license to practice dentistry are: Painless Parker Dentist, in his individual capacity; Painless Parker Dentist, in his corporate capacity; Associated Dental Supply Company, a California corporation; Parker Dental System Company, a Delaware corporation; the E. R. Parker Dental System Employees' Cooperative Plan. Several of the associates of petitioner and employees of the corporation and its subsidiaries were called as witnesses by respondents for the purpose of explaining the functions of said corporations and allied bodies, but nothing was adduced to explain the rationale of the system, if it can be so called. Certainly the many appendages attached to the corporate bodies are not conducive to the conduct of the practice of dentistry in a lawful manner, but, on the contrary, they provide a means of circumventing the spirit and the letter of the law regulating the practice of dentistry. Examined strictly from a business viewpoint they seem unnecessary and in many instances are overlapping and conglomerate. Corporation Painless Parker Dentist was incorporated by Painless Parker, the individual dentist, in 1915. He, together with his assistant or employee, B. T. Mohney, a licensed dentist, and Harry A. Morgan, a layman, constituted the board of directors.

All of the witnesses who testified on material matters in the proceedings were either assistants of petitioner or employees of the corporations which he unquestionably dominated.

Mr. Frank W. French, president of the Associated Dental Supply Company, testified that said corporation was formed in 1915, and he had been connected with it for approximately fourteen years. Frances E. Parker, wife of Painless Parker, Chalmers E. Baird and Frank W. French were the directors. The latter had also been business manager of Painless Parker Dentist during the same period of time. None of the directors of Associated Dental Supply Company were licensed dentists. The working plan, as explained by the witness, between Painless Parker Dentist and Associated Dental Supply Company, the purposes of the incorporation of each being fully heretofore set out, was that Painless Parker, dentist, was general manager of Painless Parker Dentist, corporation, and the corporation leased its various offices conducted in several cities throughout the state, together with office equipment, from Associated Dental Supply Company, a California corporation. Painless Parker Dentist purchased all dental supplies used by it from Associated Dental Supply Company. All moneys collected by the several dental offices operated by Painless Parker Dentist were remitted to the Associated Dental Supply Company, which in turn paid all rentals, salaries of dentists and operative expenses of Painless Parker Dentist. Whatever surplus remained was the property of Associated Dental Supply Company, a corporation, or the Parker Dental System Company, a Delaware corporation. The latter was incorporated some years after the former, and while both were granted substantially the same corporate powers, both continued to exist. Managers of the several dental offices seemed to have exercised their pleasure as to which they should forward their earnings. Moneys earned by Painless Parker Dentist from the actual practice of dentistry were deposited in bank to the order of one or the other of said corporations. Painless Parker received an annual salary of $20,000 for his services, Painless Parker Dentist paying $15,000 of said sum and Associated Dental Supply Company paying the remaining $5,000. His office was denominated chief surgeon and general manager for Painless Parker Dentist. Frances E. Parker is a controlling stockholder of the Associated Dental Supply Company, and her husband, Painless Parker, is a director of Parker Dental System Company. He makes irregular visits to the several dental offices. He

holds the authority of general manager, but the employment of the help is delegated by him to an agent. The dentists in charge of the several dental offices are given wide administrative powers but are subject to the orders of petitioner. The Oakland office, in charge of Dr. Saul Robert Jacobs, employs sixteen or eighteen persons of whom five are licensed dentists. Dr. Jacobs has been working in the employ of the Painless Parker Dentist since 1918. He is a director and vice-president of the Parker Dental System Company. All moneys earned by Painless Parker Dentist in the practice of dentistry are remitted to the Associated Dental Supply Company and the sum to meet the expenses of conducting the office is returned. He, with A. W. Gage and B. T. Mohney, all licensed dentists, were trustees of a trust project known as ''The Million Dollar Profit Sharing Plan'', entered into by and between Associated Dental Supply Company, a corporation, Painless Parker Dentist, a corporation, and Painless Parker, guarantors, whereby the guarantors guaranteed trustee certificates and trustee participating certificates issued under and by the E. R. Parker Dental System Employees Cooperative Plan. Subscriptions were open to the public at $50 per certificate. The fund raised upon the issue—as explained by Mr. French—was for the benefit of the capital stock of the Associated Dental Supply Company and the certificate method was adopted to avoid the necessity of sales of stock of said association. The trust was ultimately dissolved. The subscribers of certificates shared in the net earnings of the venture rather than receiving fixed rates of interest on their loans. The E. R. Parker System also served as an advertising bureau for Painless Parker Dentist and other Parker organizations by circular and newspaper methods of publicity. It issued books and pamphlets treating of the introduction of economic methods as to the saving of time and money in the practice of dentistry; painless methods of treatment of teeth; instructions for dental cashiers, receptionists, dental mechanics and janitors. It purported to give general instructions in the operation and conduct of dental offices, and treated of special dental operations which are not taught in the curriculum of the ordinary colleges.

Considerable literature in the nature of letters written by the Parker organizations and in the form of advertisements,

calling attention to the "painless technique in all of E. R. Parker dental operations", is to be found in the record.

It will be seen from the above summary that the Parker organizations, of which Painless Parker is the director in chief, are interlinked in the multifarious dental projects herein mentioned.

■ That the regulation of the practice of dentistry comes as legitimately within the powers of the legislature as does the practice of medicine, or any other of the professions which require special scientific knowledge on the part of the practitioner, there can be no doubt. It must be conceded that the legislature has power to regulate the practice of dentistry not only on the ground that it concerns public health, but also on the ground that it is the state's duty to enact laws which will afford protection to public morals. There is no profession, except the practice of medicine, where the patient passes so completely within the power and control of the operator as does the dental patient. Not infrequently does the operator perform his work upon the patient in the privacy of his office. The right to administer anesthetics which produce local or general insensibility to pain, or drugs which may produce total or semi-unconsciousness, or otherwise affect the nervous system, should be withheld not only from all persons who are not highly skilled in the knowledge of and the use of said drugs, but also from persons who cannot produce evidence of good moral character. Good moral character and "fitness" to practice dentistry are statutory requirements. Dentistry is referred to in the Dental Act (sec. 13, subd. 3) as a profession. The letter of the statute authorizes *persons* only to engage in the *practice* of dentistry. The underlying theory upon which the whole system of dental laws is framed is that the state's licensee shall possess consciousness, learning, skill and good moral character, all of which are individual characteristics, and none of which is an attribute of an artificial entity. Surely the state, for the better regulation of the practice of dentistry, and as a means of preventing evasions of the law, and with the object of more readily fixing statutory responsibility, has the power to limit such practice to natural persons.

■ Appellant claims that there is a distinction between the practice of dentistry which the statute undertakes to regulate and the purely business side of the practice; that

the first requires skill and learning, while the latter requires only training in business transactions, and if the management or conduct of the "business side" by a layman is inhibited by statute, then the inhibitions of the statute are beyond the scope of the police power of the state, and are void as being unconstitutional, citing *State* v. *Brown,* 37 Wash. 97 [107 Am. St. Rep. 798, 68 L. R. A. 889, 79 Pac. 635, 638]; *Liggett Co.* v. *Baldridge,* 278 U. S. 104, 113 [73 L. Ed. 204, 49 Sup. Ct. Rep. 57]; *Messner* v. *Board of Dental Examiners,* 87 Cal. App. 199 [262 Pac. 58]. If the statute should be so construed there would still remain other sustained accusations of unprofessional conduct of sufficient gravity to sustain the action of the Board of Dental Examiners. But we are not prepared to hold with the contention that a corporation or an unlicensed person may not be prevented from managing, conducting or controlling what petitioner terms the "business side" of the practice of dentistry. The law does not assume to divide the practice of dentistry into such departments. Either one may extend into the domain of the other in respects that would make such a division impractical if not impossible. The subject is treated as a whole. If the contention of appellant be sound, then the proprietor of the business may be guilty of gross misconduct in its management and violate all standards which a licensed dentist would be required to respect and stand immune from any regulatory supervision whatsoever. His employee, the licensed dentist, would also be immune from discipline upon the ground that he was but a mere employee and was not responsible for his employer's misconduct, whether the employer be a corporation or a natural person. On grounds of public policy such a condition could not be countenanced. The logical deduction from such a proposition would render the act impotent to accomplish the purpose it was intended to serve, and it would defeat the object of the legislation, which is well stated in *Ex parte Whitley,* 144 Cal. 167 [1 Ann. Cas. 13, 77 Pac. 879, 884], in the following language: "But it must be remembered that the act regulating the practice of dentistry and similar acts are not passed to promote the personal ends of individuals, but as salutary enactments in the exercise of the police power of the state to legislate for the safety, health and welfare of the people." This end

cannot be attained if the Dental Act is to be weakened or defeated by subterfuge or circumvented by devious methods. The right of a person merely to own a dental office is not involved in this proceeding. ■ No one would dispute the right of any person to own a dental office or dental equipment. The question most appropriate here is whether the thing owned is used for a given purpose by a person lawfully entitled to so use it. Ownership is not the absolute test of the right of use. It may be conceded that a licensed dentist would have the right to employ unlicensed persons to perform various kinds of services. In such cases the employer is responsible to and for the acts of his employees. But the converse of the proposition is not always true. In the instant case Painless Parker Dentist, a corporation, and the Associated Dental Supply Company, a corporation, are the employers of Painless Parker, the licensed dentist. If the employment is *bona fide,* as the uncontradicted evidence tends to prove, the corporations which are purely commercial enterprises, none of whose directors need be licensed dentists, are the masters of the situation, and may with or against the wish of Painless Parker, the dentist, employ such licensed persons as may be to their commercial advantage, having less regard for. the skill or fitness of the persons so employed than would a licensed proprietor who is solemnly charged by the obligation he assumes to the state to respect the salutary enactments passed in the exercise of the police power for the safety, health and welfare of the public. (*Ex parte Whitley, supra.*)

To whom do the licensed dentists employed by the corporations owe their statutory duty, to Painless Parker or to the commercial institutions which pay them, or to the patient assigned them to serve? If they owed their first allegiance to their employer, the corporation, as was held in *People* v. *Merchants Protective Corp.*, 189 Cal. 531 [209 Pac. 363], a case involving the duty of an attorney to his client, then they owed but a secondary and divided loyalty to the patient. This was denounced as not within the intendments of the law and practice. The practice of dentistry, like the practice of the law, has long had a sufficiently definite meaning throughout this country. Legislative bodies have accepted this common understanding of the people and enacted laws consistent therewith. The methods

of petitioner and his corporate associates cannot be consistently adjusted to such common understanding which is reflected in our statutes.

The practice of dentistry is not open to commercial exploitation. Such would be its fate if the methods adopted by petitioner should become general. That a corporation may not engage in the practice of the law, medicine or dentistry is a settled question in this state. None of those professions which involves a relationship of a personal as well as a professional character, which has to do with personal privacy, can be placed in the same category as druggists, architects or other vocations where no such relationship exists. The question here is whether the practices as jointly carried on by petitioner and his corporate associates and entities justify the inference that all are, as a matter of fact, mutually engaged in the practice of dentistry, or do the particular methods employed sustain the accusations, or any of them, charging petitioner with unprofessional conduct. The record speaks for itself, and further particularization is not necessary.

Petitioner has not shown that a greater or better public good has been promoted by the formation of the corporations and subsidiary associations by and through which he has conducted the practice of dentistry than that which has accrued to the long-established ethical standards which are founded upon experience, investigation and research, and which have so universally met with the approval of the public's conception and understanding of the legal and ethical proprieties as to have become codified into the laws of this state and practically into the laws of many of the countries of the civilized world.

■ Considering the letter and spirit of the Dental Act founded upon the universal method of practicing dentistry which has prevailed in this state for many years, we are of the view that the findings of the Board of Dental Examiners are supported by the evidence. Especially is this true as to count I, which charges Painless Parker with aiding and abetting Painless Parker Dentist, a corporation, in the practice of dentistry. The word "person" includes a corporation as well. (Sec. 17, Code Civ. Proc.) We are further of the view that count II is included or merged in the other counts and should not be included in a separate count.

Count III is sustained upon the use of the name "Painless Parker Dentist", a corporation, which was used interchangeably with the name "Painless Parker, Dentist", the adopted name of petitioner. We are of the view further that there is evidence in the record sufficient to sustain the finding that petitioner, through his associations with the Parker organizations, was using and permitting to be used the fictitious name E. R. Parker System, suggesting and indicating that E. R. Parker was engaged in the practice of dentistry. E. R. Parker was a name discarded by petitioner, and so far as he was concerned it became fictitious after he voluntarily caused his name to be changed to Painless Parker.

The real object, purpose and motive of petitioner in changing his name in the first instance to "Painless" Parker, and secondly in organizing the corporation Painless Parker Dentist, which corresponded precisely to his adopted name when he placed the word "dentist" thereafter, which he had the right to do under the statute, and thirdly in the retention of his original name "E. R. Parker", under which he had practiced dentistry, were proper matters for the consideration of the Board of Dental Examiners in connection with all the other evidence in the record.

The only question presented by this appeal is one of jurisdiction. We are of the opinion that the acts complained against bring petitioner within the purview of the acts defining unprofessional conduct as herein set forth.

It is insisted that the long period of time over which petitioner has operated and the interpretation that the board and its legal adviser have placed upon said act is entitled to weight in the proceeding. For a period of some fourteen years the board and petitioner have had frequent controversy as to the legality and professional propriety of petitioner's methods employed in the practice of dentistry. At no time was the subject set at rest. Delayed action on the part of those who are charged with the execution of laws will not be permitted to annul the law. It may be considered by the court as a reason for the mitigation of punishment, but the judicial department is not absolutely bound to regard it. Several of the witnesses who were employees of the Parker organization upon being called to the stand were advised by their attorneys that they might claim their privilege and decline

to testify on the ground that they were not required to give testimony against themselves. The board thereupon promised them immunity from prosecution if they would testify under the provisions of section 1324 of the Penal Code, which section had been repealed some fourteen years prior to the day of the hearing. Said witnesses testified and petitioner claims that this evidence was improperly admitted and cannot be considered, on the ground that it was obtained through mistake as to section 1324 being a subsisting act. There is no merit in this contention. Said witnesses, if a prosecution should be instituted against them, may have urged the point, but petitioner cannot raise such an objection in a proceeding instituted against him only. The competency of evidence does not in any way depend upon the means by which it is brought into court, where it is offered in evidence. The courts upon the mere question of admittance or rejection of evidence will not take cognizance of the mode of production unless it is shown the defendant himself has been compelled to give or produce it. (*People* v. *Mayen,* 188 Cal. 237 [24 A. L. R. 1383, 205 Pac. 435], which is the leading case on the subject, leaves no doubt as to the rule in this state.) ▇ It is earnestly insisted that the suspension for a period of five years from the practice of dentistry imposed by the Board of Dental Examiners is excessive. We may agree with petitioner that it does appear rather severe, considering the age of petitioner and the circumstances of the controversies which have been waged between him and the Board of Dental Examiners. As above remarked, we have no power to modify it. The board that imposed the penalty has the power at any time to modify or revoke it as may appear to them to be just.

Judgment affirmed.

Curtis, J., Preston, J., Tyler, J., *pro tem.,* and Waste, C. J., concurred.

LANGDON, J., Dissenting.—I dissent and adopt the opinion of the District Court of Appeal, First Appellate District, Division Two, as an expression of my views. The opinion of that court written by Mr. Presiding Justice Nourse is as follows:

"This is an appeal from a judgment affirming an order of the dental board suspending petitioner's license to practice dentistry.

"The petitioner was tried by the dental board upon an information framed in four counts charging unprofessional conduct. The first count charged petitioner with aiding and abetting the corporation Painless Parker Dentist to practice dentistry unlawfully. The second count charged him with aiding and abetting an unlicensed person to participate in the profits of dental offices. The third count charged the use of an assumed and fictitious name—'Painless Parker Dentist', a corporation. The fourth count charged the use of an assumed and fictitious name—'E. R. Parker System'. The dental board found petitioner guilty on all four counts and suspended his license to practice for a period of five years.

"'Painless Parker Dentist' was incorporated by articles filed with the secretary of state August 4, 1915. The amount of the subscribed corporate stock was thirty dollars divided into three shares of ten dollars each. Its designated purposes were 'to conduct, own, operate and control dental offices, to manufacture, buy, and sell dental creams, dental apparatus and supplies. E. R. Parker, one of the incorporators, changed his name to 'Painless Parker' by decree of court and served as manager and chief surgeon of this corporation. Associated Dental Supply Company was incorporated by articles filed September 1, 1915. The general purposes of this corporation seem to have been the dealing in all kinds of dental supplies and similar merchandise. The petitioner was not a stockholder or incorporator of this corporation. The conduct of the business down to the date of the hearing before the dental board in August, 1929, has been a gradual lessening of the functions of the former corporation and a consequent increase in the functions of Associated Dental Supply Company until the latter secured practically full control of the business and financial operations. Fourteen dental offices were operated in this state by 'dentists using the E. R. Parker system'. These offices were owned, or leased, by the Associated Dental Supply Company, which, in turn had some arrangement with the Painless Parker Dentist Corporation whereby these offices were 'leased' to the latter but all

the money taken in by these offices was paid directly to the Associated Dental Supply Company. Throughout this period (or at least for the last eight or ten years before the hearing) the Associated Dental Supply Company dealt directly with the managers of the local offices who in turn deposited all their receipts to the credit of that corporation. The Painless Parker Dentist Corporation has never paid a dividend, has no assets, and no funds on hand. So far as we can ascertain from the record it has never organized or operated as a corporation, has not, either directly or indirectly, assumed or exercised any control over any of the officers operated by the petitioner or over any of the licensed dentists employed therein; but has simply been used by Painless Parker the individual as his *alter ego* in his conduct of these dental offices, the principal use made of the corporation being the use of the term 'Painless Parker Dentist' upon the doors, windows and letterheads of the petitioner. When this practice was discontinued and the term 'Dentists using E. R. Parker System' was adopted does not appear from the evidence. But it does appear without any contradiction that the corporation, as such, has not functioned in the direct management or control of any of these dental offices and has not represented itself as a corporation practicing dentistry but has confined its activities to the appointment of petitioner as its manager, who, in turn, did manage the offices for the benefit of the Associated Dental Supply Company.

"In the first count it was alleged that 'between the 4th day of August, 1915, and the 31st day of May, 1929', the petitioner did aid and abet an unlicensed person to practice dentistry 'by permitting, allowing and authorizing said corporation (Painless Parker Dentist) to conduct, own, operate, and control dental offices throughout the state of California, where dental operations were performed, and carry on the practice of dentistry therein'. The basis of the charge is found in the provisions of section 11 of the Dental Act (Deering's General Laws, 1923, Act No. 2048), which declare the practice of dentistry to include one '(5) who manages or conducts as manager, proprietor, conductor, or otherwise a place where dental operations are performed'. By section 13 of the act unprofessional conduct

is defined to include 'aiding or abetting any unlicensed person to practice dentistry unlawfully'.

"In support of the judgment the respondents argue that any transaction within the purview of subdivision 5 of section 11 of the act constitutes the practice of dentistry; that a corporation may not be licensed to practice dentistry; that any licensed dentist who aids a corporation in the performance of any of the acts mentioned in subdivision 5 is aiding an 'unlicensed person' to practice. The appellant argues that the provisions of that subdivision are unconstitutional in so far as they purport to prohibit an unlicensed person from managing the purely business or economic affairs of a dental office, and that the term 'unlicensed' dentist refers only to a natural person who might be licensed under the act and not to a corporation owning or operating a dental office.

"Bearing in mind that 'the ultimate purpose of the act is to bring about and insure skill and proficiency in the practice of the profession' (*Jacobs* v. *Board of Dental Examiners*, 189 Cal. 709, 714 [209 Pac. 1006, 1008]), it must be manifest that, if the quoted provisions of the act mean what the respondents contend that they mean, they are unconstitutional as placing unreasonable restrictions upon the conduct of a lawful business—restrictions which are not referable to the regulatory police powers of the state. (*State* v. *Brown*, 37 Wash. 97 [107 Am. St. Rep. 798, 68 L. R. A. 889, 79 Pac. 635]; *Liggett Co.* v. *Baldridge*, 278 U. S. 105 [73 L. Ed. 204, 49 Sup. Ct. Rep. 57].) In the Brown case the supreme court of Washington had under consideration the provisions of section 8 of the dental act of that state which declared it to be a misdemeanor to 'own, run, operate or cause to be operated, or manage a dental office'. In holding that portion of the act unconstitutional the Washington court said that 'To own and manage property is a natural right, and one which may be restricted only for reasons of public policy, clearly discernible. But', said the court, 'we are unable to say or perceive that the health, moral, or physical welfare of the public, or any of the personal or property rights of its individuals, are endangered by the ownership and management of a dental office, so long as those employed therein to do the actual

dentistry work are qualified and licensed as by law required.'

"In the Brown case the court gave the illustration of the widow of a licensed dentist who assumed control and management of the business of the office, and who, though she employed none but licensed dentists to perform the dental work, would be chargeable under the strict terms of the act. Other illustrations might be added. Thus the administrator, trustee or receiver duly appointed to manage the estate of a licensed dentist would, under our statute, be guilty of a misdemeanor. (Sec. 12.) The manager or proprietor of 'a place where dental operations are performed' would include the manager and owner of every hospital and clinic permitting such operations, the many charitable agencies maintaining clinics, the infirmaries and guilds maintained and operated by the students in the universities and colleges, the many dental clinics maintained by parents' organizations for the benefit of school children, as well as the owners and managers of buildings where such operations are performed.

"Closely resembling the case at hand is *Messner* v. *Board of Dental Exmrs.*, 87 Cal. App. 199 [262 Pac. 58, 60], where the court of the Third Appellate District annulled an order suspending the license of a dentist on the charge that an unlicensed person was the 'manager' of his office. The court said that 'Cohn had charge of the purely business end of the dental office, . . . but there is no evidence that he had or exercised the slightest control or direction of the professional work performed in such office.' In referring to the provisions of subdivision 5, the court said: 'A reasonable construction of the quoted provisions of the statute appears to be that, to come within the terms thereof, one must in some manner, to some extent, directly or indirectly, control or direct some professional service of the kind that dentists are licensed to render.'

"This is about the same interpretation which was given the quoted portion of the section by the attorney-general of the state as early as 1918 when he advised the dental board that 'so much of the business relating to his practice as does not concern the public may . . . be operated through the medium of a corporation. It is the evident intent of the act that the licensed dentist in his dealings with the public

shall operate in his own name and that that name shall be the one under which he is licensed, but under the statute it is apparently not made of any concern to the public whether the business of the dentist other than as the public comes in contact therewith, is operated by the dentist himself or by a corporation to which he is responsible in connection therewith, or which may have an interest in the facilities employed or receipts from his practice.'

"The appellant insists that the foregoing interpretation was made at his request and that he has frequently informed the respondent board of his desire to conform to the law in this respect and has frequently requested the board to inform him of its desires and demands in that respect. In view of the uncertainty of the act, and in view of the fact that petitioner was charged with a violation of its terms over a period of fourteen years, we are inclined to petitioner's view of contemporaneous construction growing out of the interpretations of the board and of its legal advisor and the conduct of the board over that period of time. The ambiguity of the quoted portion of the statute is evident, and, whether we agree with the interpretation of the dental board and the attorney-general, that interpretation, employed over a long period of years, is nevertheless entitled to weight in this proceeding. Thus, in *The Pocket Veto Case,* 279 U. S. 655, 690 [73 L. Ed. 894, 49 Sup. Ct. Rep. 463, 470], the Supreme Court said: 'that a practice of at least twenty years' duration "on the part of the executive department, acquiesced in by the legislative department, while not absolutely binding on the judicial department, is entitled to great regard in determining the true construction of a constitutional provision the phraseology of which is in any respect of doubtful meaning' ". (Quotation is from *State* v. *South Norwalk,* 77 Conn. 257, 264 [58 Atl. 759].) This principle is more liberally applied to the construction of statutes than to the provisions of a constitution. (6 R. C. L., p. 63, where many cases on the general principle stated in the Connecticut case are cited.)

"Applying the doctrine to the case at hand we find, first, that the statute is uncertain where it refers to one who 'conducts as . . . proprietor . . . or otherwise *a place* where dental operations are performed' because if this language includes an owner of a dental office who merely con-

trols the purely business side of the place it is unconstitutional (*State* v. *Brown*, 37 Wash. 97 [107 Am. St. Rep. 798, 68 L. R. A. 889, 79 Pac. 635, 638]; *Liggett Company* v. *Baldridge*, 278 U. S. 105, 113 [73 L. Ed. 204, 49 Sup. Ct. Rep. 57]); and if the words 'manage or conduct' cover such functions as do not 'call for any of the professional skill required of a dentist but rather that of one trained in business transactions' (*Messner* v. *Board, supra*), then the inhibitions of the statute are beyond the scope of the police power of the state; and, second, the statute being uncertain in this respect, the petitioner was entitled to assume from the language of the information that he was required to answer that charge in the light of the interpretation placed upon the statute by the dental board and its legal advisor. For these reasons the demurrer to the first count of the information should have been sustained upon the grounds of uncertainty.

"The evidence taken in support of the allegations of the first count does not aid the pleading as it merely tends to prove that, after the incorporation of Painless Parker Dentist, the petitioner became its manager. (Here it should be added that, though the charge in the information covered a period of fourteen years, none of the evidence was tied to that period and much of it was not laid in the state of California whereas it appears that the petitioner was operating during that period in other states.) Upon this charge and evidence he was convicted of aiding and abetting an 'unlicensed person to practice dentistry unlawfully'. In *Ex parte Whitley*, 144 Cal. 167, 180 [1 Ann. Cas. 13, 77 Pac. 879], the Supreme Court, referring to a similar statute, said: 'But it must be remembered that the act regulating the practice of dentistry and similar acts are not passed to promote the personal ends of individuals, but as salutary enactments in the exercise of the police power of the state to legislate for the safety, health, and welfare of the people.' To reach this end the dental act has prescribed the method by which a person may obtain a license to practice dentistry, and from the language of the act, a license could be granted to a human being only and not to an artificial creation such as a corporation. The terms of the act, in so far as they relate to the licensing of individuals and to the practice of dentistry, show clearly that they

were directed to persons as distinguished from corporations. Similar interpretations have been given to the act regulating the practice of architecture in *Binford* v. *Boyd,* 178 Cal. 458, 462 [174 Pac. 56]; *People* v. *Allied Architects Assn.,* 201 Cal. 428, 435 [257 Pac. 511]; the State Medical Act in *Pilger* v. *City of Paris D. G. Co.,* 86 Cal. App. 277, 281 [261 Pac. 328]; and the Nebraska Medical Act in *State Electro-Med. Inst.* v. *State,* 74 Neb. 40 [12 Ann. Cas. 673, 103 N. W. 1078]. In the latter case the Nebraska court said (p. 1079): 'There was no necessity of legislation to prohibit corporations, as such, from practicing medicine. It is impossible to conceive of an impersonal entity "judging the nature, character and symptoms of the disease", or "determining the proper remedy", or giving or prescribing the application of the remedy to the disease. Members of the corporation, or persons in its employ, might do these things, but the corporation itself is incapable to do them. The qualification of a medical practitioner is personal to himself. The intention of the law is that one who undertakes to judge the nature of a disease, or to determine the proper remedy therefor, or to apply the remedy, must have certain personal qualifications; and, if he does these things without having complied with the law, he is subject to its penalties. Making contracts is not practicing medicine. Collecting the compensation therefor is not practicing medicine, within the meaning of this statute. No professional qualifications are requisite for doing these things.'

"In view of these authorities it would seem to follow that when the legislature declared it to be unprofessional for a licensed dentist to aid an 'unlicensed person' to practice dentistry it had in mind the practice of dentistry which a licensed person might carry on—'some professional service of the kind that dentists are licensed to render' (*Messner* v. *Board, supra*) and did not contemplate a corporation which could not become licensed under the act and which could do no more than conduct the business side of the office.

"Putting it in a different form, the evidence discloses that some fourteen years prior to the filing of the information the Painless Parker Dentist Corporation, in some manner not made to appear, appointed the petitioner as its gen-

eral manager and then ceased to function as a corporation. The petitioner had complete control and management of all the dental offices, employed licensed dentists as local managers of each office, who in turn employed licensed dentists to perform all the dental operations performed therein. If we could treat the corporation as the employer under this evidence we would still be forced to the conclusion that it was not practicing dentistry under the true meaning of the statute. In this respect the case is the same, except as to the number of operations performed, as *Renwick* v. *Phillips*, 204 Cal. 349, 350 [268 Pac. 368, 369], where the Supreme Court, in affirming a judgment annulling an order of the medical board revoking Renwick's license to practice medicine and surgery, said: 'The petitioner was a. licensed chiropodist. The said Roy Finney conducted a chiropodist parlor, equipped with a variety of foot remedies and appliances which he prepared and sold there. He employed the petitioner and respondent herein to act as a chiropodist in connection with his said establishment and to give such treatment and perform such operations as only could be done by the holder of a regular chiropodist's license so to do. In so far there was nothing illegal or unprofessional in the relations or conduct of Dr. Renwick in his connections with said Finney at the latter's place of business.'

"There is a clear distinction between this principle and that involved in the cases cited by respondent. *People* v. *California Pro. Corp.*, 76 Cal. App. 354 [244 Pac. 1089], and *People* v. *Merchants Pro. Corp.*, 189 Cal. 531 [209 Pac. 363], were *quo warranto* proceedings to oust the corporations from the practice of law. The principle is stated in the latter case at page 538, where the court said: 'The essential relation of trust and confidence between attorney and client cannot be said to arise where the attorney is employed, not by the client, but by some corporation which has undertaken to furnish its members with legal advice, counsel and professional services. The attorney in such a case owes his first allegiance to his immediate employer, the corporation, and owes, at most, but an incidental, secondary and divided loyalty to the clientele of the corporation.' To the same effect is *Midland Credit Adjustment Co. et al.* v. *Donnelley*, 219 Ill. App. 271. *People* v. *Painless Parker Dentist*, 85 Colo. 304 [275 Pac. 928], was also a *quo war-*

*ranto* proceeding heard on a demurrer to a petition which alleged that the corporation was practicing dentistry and advertised to that effect.. These allegations being admitted on the demurrer the supreme court of Colorado held that the corporation was employed in an illegal practice as no corporation could be licensed to practice dentistry. *People* v. *State Board, etc.,* 85 Colo. 321 [275 Pac. 933], was a proceeding in prohibition which was heard and determined on the record in the former case. As this record disclosed that the corporation was practicing dentistry the supreme court correctly denied the petition for prohibition to restrain the dental board from trying petitioner on a charge that he was aiding the corporation to practice illegally. *Pilger* v. *City of Paris etc. Co.,* 86 Cal. App. 277 [261 Pac. 328], merely holds that the corporation was not liable for the negligence of its employees in a chiropody department maintained by the corporation in its store because the corporation could not practice chiropody.

"The cases cited follow the general rule of the authorities which is that the true purpose and intent of regulatory statutes of this character is that one who undertakes to judge the nature of a disease or other bodily ailment, or to determine the proper remedy, must have certain personal qualifications, and that, from the nature of these required qualifications a corporation may not be licensed to practice the profession. Adopting this rule the authorities then hold that when the regulatory statute refers to the licensing of 'persons' it intends natural and not artificial persons. (*Pharmaceutical Soc.* v. *London & Prov. Suppl. Assn., Ltd.,* 5 L. R. [Appeal Cases] 857.)

"The second count charged the petitioner with unprofessional conduct in that he aided an unlicensed person named Ramona McShane to practice dentistry unlawfully in that he permitted her to participate in the profits of the dental office owned and operated by 'Painless Parker Dentist, a corporation'. The evidence in support of the charge was that in 1920 the Associated Dental Supply Company was in need of funds and for that reason executed a trust agreement selling trust certificates in small denominations. Ramona McShane purchased 151 shares at $1 a share. Interest in the nature of dividends was paid to each certificate holder until 1929 when the loan was repaid and the trust

dissolved. As the Painless Parker Dentist Corporation leased dental offices from the Associated Dental Supply Company the respondents found that Ramona McShane participated in the profits of the Painless Parker Corporation, that she therefore practiced dentistry unlawfully, and that the petitioner aided and abetted her in so doing. It would be just as reasonable to say that every stockholder of a bank which has loaned money to the owner of a building in which some dentist has practiced without a license is an aider and abetter in the unlawful practice of dentistry. To interpret the statute as contended for by respondents would make it unconstitutional for the reasons heretofore given, whereas, if the statute is given a reasonable and constitutional interpretation the information and the evidence both demonstrate that Ramona McShane was not practicing dentistry within any sound construction of the act.

"The third count purported to charge petitioner with practicing under an assumed or fictitious name in the use of the term 'Painless Parker Dentist' and the fourth count charged a similar breach of the act in the use of the term 'E. R. Parker System'. The evidence was that petitioner, by decree of court, changed his name to 'Painless Parker'. This name was used by him in his practice of dentistry. The name Painless Parker Dentist was not fictitious. (*Spreckels* v. *Grace Darling Hosp. Assn.*, 28 Cal. App. 646, 648 [153 Pac. 718]; *Wetenhall* v. *Mabrey*, 209 Cal. 293 [286 Pac. 1015]; *Andrews* v. *Glick*, 205 Cal. 699, 701 [272 Pac. 587].) There is no evidence in the record to sustain the allegations of this count. All the evidence shows without conflict that petitioner was practicing under the name given him by decree of court which was the name under which he was licensed to practice by respondents.

"The fourth count purported to charge petitioner with the practice of dentistry under the false and fictitious name of 'E. R. Parker System'. E. R. Parker is the name under which petitioner was engaged in business prior to the decree changing his name to 'Painless Parker'. Under that name he promulgated the system of studying and teaching the practice of dentistry including both the business details and technical matters of the profession. For this purpose manuals and other printed documents were prepared and circulated for the use of those engaged in the dental prac-

tice and in many of the offices maintained by petitioner the words 'dentists using the E. R. Parker System' were prominently displayed. In support of the allegations of this count the evidence showed no more than that the petitioner used the expression in the *teaching* of the practice of dentistry. Under no possible theory could the transactions detailed be treated as the practice of dentistry.

"Finally it is argued that the respondents usurped their authority in this proceeding when they compelled the witnesses French, Jacobs and Cage to appear before them and give testimony against the petitioner. The argument is that because of section 12 of the Dental Act these witnesses were each guilty of a misdemeanor if the charges contained in the information against the petitioner were true, and that they were, therefore, entitled to be excused from giving testimony against themselves under the provisions of section 13, article I, of the Constitution.

"When the witnesses were called they were advised by their attorneys that they need not testify upon the ground that their testimony might incriminate them, but the respondents refused to heed their objections and ordered them to testify after counsel for the dental board had read to the witnesses the provisions of section 1324, Penal Code, and, pretending to act in accord therewith, undertook to grant them immunity from prosecution if they would so testify. This section of the Penal Code had been repealed in 1917, and hence was not available at the time of the hearing which was in September, 1929. There can be no doubt that these witnesses were led into a false sense of security by the pretended reliance of respondents upon the repealed section and by the pretended assurance of immunity to them which neither the respondents nor their counsel had any possible right to grant. This action of the board is not defended on this appeal and in view of the rule of *Ex parte Clarke*, 103 Cal. 352 [37 Pac. 230], and *Hickman* v. *London Assurance Corp.*, 184 Cal. 524, 531 [18 A. L. R. 742, 195 Pac. 45], we cannot see how it could be defended. If this evidence is to be disregarded there is no evidence to support any charge in the information as the case presented by the dental board rests (with certain exceptions which are immaterial) upon the evidence which the board compelled these witnesses to give in disregard of their constitutional

rights. The great weight of the authorities is to the effect that evidence so taken must be treated as no evidence, while on the other hand authorities may be found holding that evidence, no matter how illegally obtained, must be given its full weight. We do not need to decide that question here because we are satisfied from a review of the entire record that all the evidence, including that illegally obtained, wholly fails to support any charge in the information.''

The judgment should be reversed, with instructions to the trial court to enter its order annulling the order under review.

Rehearing denied.

Langdon, J., and Tyler, J., *pro tem.*, dissented.